IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CMPC USA, INC.**<br>*Plaintiff,*<br><br>v.<br><br>**GWSI, INC., M. GERACE ENTERPRISES, INC., KEVIN BURKE in his individual capacity, and MICHAEL GERACE in his individual capacity**<br>*Defendants.* | **CIVIL ACTION NO. 24-2087** |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                                                    **November 1, 2024**

CMPC USA, Inc. ("CMPC" or "Plaintiff"), a manufacturer, allegedly contracted with GWSI, Inc. ("GWSI") and M. Gerace Enterprises, Inc. ("MGE") to transport, store, and handle its produced goods. The parties, however, dispute which of two versions of the contract governs their relationship. CMPC seeks a declaration that its version governs and alleges that GWSI and MGE breached the contract. CMPC also alleges that GWSI, MGE, and their principals, Kevin Burke and Michael Gerace (collectively, "Defendants"), refused CMPC and its customers access to CMPC's goods based on Defendants' improper version of the contract and made several defamatory statements to CMPC's customers.

CMPC asserts claims for declaratory relief against GWSI (count I), breach of contract against GWSI and MGE (count II), conversion against GWSI, Michael Gerace, and Kevin Burke (count III), tortious interference with business relations against all Defendants (count IV), and defamation and commercial trade disparagement against all Defendants (count V).

Presently before this Court is Defendants' Motion to Dismiss Counts III, IV, and V of the Amended Complaint for failure to state a claim. ECF 44. For the reasons stated below, Defendants' Motion to Dismiss Counts III, IV, and V is **DENIED**.

## I. JURISDICTION

The Court has diversity jurisdiction because Plaintiff is a citizen of Georgia and Defendants are citizens of Nevada and Pennsylvania, and the amount in controversy exceeds $75,000. Am. Compl. (ECF 40) at ¶ 9. Neither party disputes that Pennsylvania law applies.

## II. RELEVANT FACTUAL BACKGROUND

The events giving rise to this case, as alleged by Plaintiff in the Amended Complaint, are as follows.[1] Plaintiff is a global company that produces and commercializes forestry products, cellulose, paper, and tissue products. Am. Compl. ¶ 12.

### A. The Parties' Contracts

As alleged in the Amended Complaint, Plaintiff entered into two separate contracts with GWSI and MGE for the warehousing and shipment of Plaintiff's produced goods. On December 19, 2020, Plaintiff executed a Transportation Services Agreement with MGE, and on February 1, 2021, Plaintiff executed a Warehouse Services Agreement with GWSI for the warehousing, storage, receipt, and handling of Plaintiff's goods. Id. ¶¶ 13, 23–24. The Amended Complaint alleges that neither agreement imposes any minimum volume requirements, shortfall penalties, or other minimum charges on Plaintiff. Id. ¶¶ 17–18, 25.

As relevant here, the Warehouse Services Agreement allegedly requires GWSI to comply with Plaintiff's reasonable instructions and to release Plaintiff's goods to Plaintiff or its designee

---

[1] The Court additionally considered exhibits attached to the Amended Complaint, including the contracts at issue. See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider documents attached to or submitted with the complaint in evaluating a motion to dismiss).

within the requested delivery or due date after receipt of a Release Order (as defined in the Agreement) from Plaintiff. Id. ¶¶ 14–16. The agreement also allegedly does not permit GWSI to claim any warehouse lien or to seek to enforce any warehouse lien in Plaintiff's goods. Id. ¶ 22.

### B. The Parties' Course of Performance

The Amended Complaint alleges that on January 25, 2024, Defendants for the first time claimed Plaintiff owed $1.1 million in shortfall penalties for failing to adhere to alleged minimum volume requirements set out in the agreements. Id. ¶ 35; Ex. 5. Plaintiff denied that the contract imposes minimum volumes or requires shortfall penalties. Id. ¶ 36. The parties subsequently traded letters, with each side providing the other a different version of the contract to support their respective position on whether shortfall penalties are owed. Id. ¶¶ 36–40, 42–62. Plaintiff alleges Defendants' alternative version is incorrect. Id.

The Amended Complaint alleges that on May 13, 2024, after Plaintiff had refused to pay shortfall penalties, GWSI began denying Plaintiff access to its goods and refused to ship and load Plaintiff's goods out of GWSI's warehouses. Id. ¶ 63. The Amended Complaint further alleges that GWSI separately denied Plaintiff's agents and customers—including Annett Holdings, Inc. d/b/a TMC Transportation, Hampton Lumber, Spot Freight, Inc., and The Home Depot, Inc.—access to Plaintiff's goods and refused to ship and load Plaintiff's goods in response to Plaintiff's customers' requests. Id. ¶¶ 72–73. GWSI's hold on Plaintiff's goods allegedly caused Plaintiff's agents and customers to be unable to perform their contracts with Plaintiff. Id. ¶¶ 74–76.

In addition, Defendants—including their corporate officers' Michael Gerace, President, and Kevin Burke, CEO—allegedly communicated to Plaintiff's agents and customers that the goods were on hold because Plaintiff had not made Plaintiff's required payments to GWSI. Id. ¶¶ 78–80. The Amended Complaint alleges that these communications were false because Gerace and Burke knew or should have known that the Warehouse Services Agreement did not impose

3

minimum volume requirements or shortfall penalties, and the allegedly false communications caused Plaintiff damage.  Id. ¶¶ 77, 84–86, 90–92, 126–27.

## III. PROCEDURAL HISTORY

Plaintiff first filed an initial complaint against GWSI, MGE, Kevin Burke in his individual capacity, and Michael Gerace in his individual capacity on May 15, 2024.  ECF 1.  GWSI and MGE, in turn, filed a complaint against CMPC in the Court of Common Pleas of Delaware County, Pennsylvania on May 17, 2024, which CMPC removed to this Court.  ECF 1 at ¶ 4 (docket entry for case number 24-cv-2394).  On June 13, 2024, the Court consolidated the two cases for discovery and pretrial motions, but the Court on November 1, 2024, vacated its consolidation Order and dismissed GWSI's and MGE's Amended Complaint without prejudice to bringing their claims as compulsory counterclaims to CMPC's Amended Complaint.  ECF 67.

On July 15, 2024, GWSI, MGE, Kevin Burke, and Michael Gerace moved to dismiss Plaintiff's claims against them for failure to state a claim and for lack of jurisdiction.  ECF 34.

On August 5, 2024, Plaintiff filed an Amended Complaint against GWSI, MGE, Kevin Burke, and Michael Gerace (ECF 40), asserting the following five claims:

1. Declaratory Relief, against GWSI;

2. Breach of Contract under Pennsylvania law, against GWSI and MGE;

3. Conversion under Pennsylvania law, against GWSI, Michael Gerace, and Kevin Burke;

4. Tortious interference with business relations under Pennsylvania law, against all Defendants;

5. Defamation and commercial trade disparagement under Pennsylvania law, against all Defendants.

On August 19, 2024, Defendants moved to dismiss Counts III–V for failure to state a claim. ECF 44. Plaintiff responded on September 3, 2024. ECF 47. Defendants filed a reply on September 10, 2024. ECF 50.

Presently before the Court is GWSI, MGE, Kevin Burke, and Michael Gerace's Motion to Dismiss Counts III, IV, and V of Plaintiff's Amended Complaint. ECF 44.

## IV. PARTIES' CONTENTIONS

Defendants first assert that Plaintiff's conversion claim against GWSI fails because it is barred by the gist of the action doctrine, and because the claim against GWSI is precluded, the conversion claim against the individuals, Michael Gerace and Kevin Burke, also fails. ECF 44 at 7–11.[2] Plaintiff responds that its conversion claim is not barred because Plaintiff has a property interest in the subject of the conversion claim. ECF 47 at 12–14. Plaintiff also argues that Amended Complaint sufficiently pleads that Gerace and Burke personally participated in the alleged tort, and thus the individual claims should survive. Id. at 14–15.

Defendants next contend that Plaintiff's claim for tortious interference fails because Plaintiff does not sufficiently plead the essential elements and it is barred by the gist of the action doctrine. ECF 44 at 12–20. Plaintiff counters that the Amended Complaint adequately pleads a tortious interference claim on the merits and that its claim is distinct from the contract claim. ECF 47 at 15–20.

Defendants lastly argue that the claims for defamation and commercial trade disparagement in count V must be dismissed for several reasons. First, on defamation, Defendants argue the alleged statements are not defamatory, do not identify the recipient of the communication with sufficient specificity, are true statements, Plaintiff does not allege special damages with

---

[2] Defendants argue that the individual claims fail in any event because the Amended Complaint does not allege Gerace or Burke extended a promise in their individual capacities. Id. at 10–11.

particularity, and it is barred by the gist of the action doctrine. ECF 44 at 20–23. Second, on disparagement, Defendants argue the alleged statements were not disparaging and/or were not false, Plaintiff does not allege pecuniary harm, and the claim is also barred by the gist of the action doctrine. Id. at 23–25.

Plaintiff responds that the Amended Complaint identifies at least four of Plaintiff's customers that allegedly were the recipients of Defendants' knowingly false communications which caused Plaintiff harm. ECF 47 at 21–22.

## V. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted). Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. University of Sciences, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## VI. ANALYSIS

Defendants cast a wide net in their Motion to Dismiss, challenging virtually every element of three claims alleged in the Amended Complaint. The Court will **deny** each of Defendants' arguments.

### A. Conversion (Count III)

The gist of the action doctrine bars a tort claim where the claim is essentially "a claim against the party for breach of its contractual obligations." Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). To determine whether the gist of the action is a breach of contract or a tort, courts look to the nature of the defendant's purported duty. See Sales Benchmark Index LLC v. DeRosa, 18-cv-2680, 2018 WL 3918090, at *4 (E.D. Pa. Aug. 2018) (Savage, J.) (citing Bruno, 106 A.3d at 63). Where the duty is defined by a contract and the dispute is about whether a defendant did something he was contractually required to do, the plaintiff is limited to contractual damages. See SEI Invs. Glob. Funds Servs. v. Citibank, N.A., 100 F. Supp. 3d 447, 453 (E.D. Pa. 2015) (Beetlestone, J.). Alternatively, if the duty arises out of a "broader social duty owed to all individuals, which is imposed by the law of torts and, hence exists, regardless of the contract," then a cause of action sounding in tort lies. Bruno, 106 A.3d at 68–69. Additionally, gist of the action does not bar a conversion claim "when a plaintiff has an independent property interest in the thing that is subject to the conversion claim[.]" Hirtle Callaghan Holdings, Inc. v. Thompson, 18-cv-2322, 2022 WL 2048656, at *7 (E.D. Pa. June 7, 2022) (Surrick, J.).

Here, the Amended Complaint sufficiently alleges that Defendants wrongfully held Plaintiff's property in violation of a "broader social duty owed to all individuals[.]" Bruno, 106 A.3d at 68–69. GWSI allegedly denied Plaintiff access to its own property and refused to ship and load Plaintiff's goods out of GWSI's warehouses to Plaintiff's customers. Id. ¶¶ 63, 72, 74, 76–77. The Amended Complaint further alleges Plaintiff had a property interest in the items alleged to be wrongfully held. Id. ¶¶ 108–09. The social duty not to wrongfully hold items belonging to another party exists independent of the contract, and thus the gist of the action doctrine does not bar Plaintiff's conversion claim against GWSI.

7

Plaintiff also plausibly alleges a conversion claim against Gerace and Burke individually. A corporate officer can be held liable for misfeasance when the officer "participates in the wrongful acts." Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983). The Amended Complaint alleges that Gerace and Burke participated in the alleged conversion when, acting on GWSI's behalf, they "placed a hold on shipping CMPC's Goods[.]" Am. Compl. ¶¶ 113, 137.

### C. Tortious Interference (Count IV)

Claims for tortious interference with existing contracts under Pennsylvania law require that a plaintiff show "(1) the existence of a contractual…relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship …; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct[.]" Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009). Defendants argue the Amended Complaint does not sufficiently allege any of these elements and that the tortious interference claim is barred by the gist of the action doctrine. Defendants' arguments are unavailing.

#### 1. Plaintiff Alleges Existing Contracts With Third Parties

The Amended Complaint sufficiently alleges that Plaintiff had existing contracts with certain "customers and agents"—Annett Holdings, Inc., Hampton Lumber, Spot Freight, Inc., and The Home Depot, Inc.—and that GWSI's alleged refusal to ship Plaintiff's goods to those customers caused Plaintiff's customers to be unable to perform their contracts with Plaintiff. Am. Compl. ¶¶ 72–77.

#### 2. Plaintiff Alleges Purposeful Action

For tortious interference claims, Section 766 of the Restatement, which Pennsylvania courts adopt, see Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978), explains "purposeful action" as action which "induc[es] or otherwise caus[es] the third

8

person not to perform the contract[.]" Restatement (Second) of Torts § 766 (1979); Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 660 (3d Cir. 1993).[3]

The Amended Complaint plausibly alleges that Defendants directed their conduct towards Plaintiff's customers (third persons) which allegedly caused those customers to breach their contracts with Plaintiff. As alleged in the Amended Complaint, Defendants denied Plaintiff's customers access to Plaintiff's goods, refused to ship and load those goods in response to customer requests, and falsely communicated to Plaintiff's customers that the goods were on hold because of Plaintiff's alleged failure to make shortfall penalty payments. Am. Compl. ¶¶ 74–76, 78.

### 3. Plaintiff Alleges Defendants Acted Without Privilege or Justification

In order to survive dismissal, Plaintiffs "must demonstrate a lack of privilege or justification as part of [their] prima facie case[.]" E. Rockhill Twp. v. Richard E. Pierson Materials Corp., 386 F. Supp. 3d 493, 502 (E.D. Pa. 2019) (McHugh, J.). This "requires proof that the defendant's actions were improper under the circumstances presented[.]" Phillips v. Selig, 959 A.2d 420, 429 (Pa. Super. Ct. 2008). Section 767 of the Restatement lists several non-exhaustive factors for courts to consider; the central inquiry is whether "the defendant's conduct is sanctioned by the rules of the game which society has adopted." Phillips, 959 A.2d at 430 (Pa. Super. Ct. 2008) (internal quotation marks and citation omitted).

Defendants argue that GWSI's alleged hold on Plaintiff's goods until Plaintiff paid shortfall penalties were justifiable business actions and that GWSI's communications to Plaintiff's customers that Plaintiff had not made shortfall payments were privileged truthful statements. See

---

[3] Defendants argue as a threshold matter that Section 766A of the Restatement is more apropos to Plaintiff's claim. Section 766A addresses where a defendant allegedly prevents the plaintiff from performing a contract with a third party. ECF 44 at 13–17. Defendants argue that Plaintiff's claim must be dismissed because Pennsylvania courts do not adopt Section 766A. Id. The Court, however, must reject Defendants' attempt to litigate by convenience. See ECF 47 at 18 n.5 ("CMPC does not base its tortious interference claim on a 'disruption' theory [under Section 766A]."). At this stage, the Amended Complaint states a claim for relief under Section 766.

Restatement (Second) of Torts § 772 (providing a "truthfulness" privilege to claims of tortious interference). Defendants' arguments, however, are mere disputes of the core allegations in the Amended Complaint, but at this stage, the Court must accept Plaintiff's version of the facts as true. Here, the Amended Complaint sufficiently alleges that GWSI knew it did not have a contractual right to shortfall penalties, and thus it was without justification or privilege when it allegedly refused access to Plaintiff's goods and communicated to third parties that Plaintiff owed money (which Plaintiff denies). Am. Compl. ¶¶ 84–86, 125.

### 4. Plaintiff Alleges Resulting Legal Damage

The Amended Complaint alleges that Defendants' tortious interference has "caused harm to CMPC's relationships with its agents and customers[.]" Am. Compl. ¶¶ 77, 90. Plaintiff thus satisfies the fourth element of a tortious interference claim.

### 5. Plaintiff's Tortious Interference Claim is Not Barred By Gist of the Action

As alleged in the Amended Complaint, Defendants falsely communicated to Plaintiff's customers that Plaintiff owed GWSI money, and these false communications allegedly interfered with Plaintiff's contractual relationships with those customers. Id. ¶¶ 120–24. Accepting as true the Amended Complaint's allegation that Defendants knew Plaintiff did not actually owe any shortfall penalties, Plaintiff sufficiently alleges breach of a social duty not to improperly interfere in third-party contracts. See Bruno, 106 A.3d at 68–69. The tortious interference claim is not barred by the gist of the action doctrine.

### D. Defamation and Commercial Trade Disparagement (Count V)

Defendants' overlapping arguments to dismiss the defamation and commercial trade disparagement claims (Count V) on the merits and as precluded by the gist of the action doctrine are unavailing at this stage of the case.

In Pennsylvania, claims for defamation and commercial trade disparagement are analyzed under two separate legal standards. Defamation requires that the plaintiff show "(1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion." Joseph v. Scranton Times L.P., 129 A.3d 404, 424 (Pa. 2015) (quoting 42 Pa. C.S. § 8343(a)). For commercial trade disparagement, a plaintiff must show that the defendant made a disparaging statement and "1) [ ] the disparaging statement of fact is untrue…; 2) that no privilege attaches to the statement; and 3) that the plaintiff suffered a direct pecuniary loss as the result of the disparagement." U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924 (3d Cir. 1990).

The Amended Complaint here identifies the alleged defamatory and/or disparaging communications. It alleges that Defendants, specifically Michael Gerace and Kevin Burke, told Plaintiff's customers that Plaintiff's goods were on hold because Plaintiff owed GWSI money. Am. Compl. ¶ 78. The Amended Complaint also identifies the recipients of these communications, including at least four of Plaintiff's customers—Annett Holdings, Inc. d/b/a TMC Transportation, Hampton Lumber, Spot Freight, Inc., and The Home Depot, Inc. Id. ¶ 79. The Amended Complaint further alleges that these communications were false because Defendants knew or should have known that based on the Warehouse Services Agreement, Plaintiff did not in fact owe any outstanding shortfall penalties. Id. ¶¶ 84–85. And lastly, the Amended Complaint sufficiently alleges resulting special harm, including $7,542 in customers' assessed fees and not less than $28,912.48 in lost store sales. Id. ¶¶ 91–92; see Burger v. Blair Med. Assocs., Inc., 964 A.2d 374, 379 (Pa. 2009) ("[A] plaintiff claiming slander must demonstrate special damages[.]").

Such allegations can support a plausible inference that the statements were defamatory and/or disparaging. See Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014) ("A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." (internal quotation marks and citations omitted)); Menefee v. Columbia Broad. Sys., Inc., 329 A.2d 216, 220 (Pa. 1974) (defining a disparaging statement as one "which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality[.]" (quoting Restatement of Torts § 629 (1938))).

Defendants' contention that the alleged defamatory and/or disparaging statements were true relies in part on the parties' dispute over which contract governs and the proper interpretation of that contract, which is not ripe for resolution. At this stage, the Court must accept as true Plaintiff's allegation that Defendants knew or reasonably should have known that Plaintiff's version of the contract governs, and that Plaintiff never owed any shortfall penalties under the prevailing contract.

Furthermore, because the Amended Complaint's allegations of defamation and disparagement plausibly allege violations of broader social duties which exist outside of the contract, Count V is not precluded by the gist of the action doctrine. See Bruno, 106 A.3d at 68.

### VII. CONCLUSION

For the foregoing reasons, Defendants GWSI, MGE, Michael Gerace, and Kevin Burke's Motion to Dismiss Counts III, IV, and V is **DENIED**.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-2087 CMPC USA v GWSI\24cv2087 Memo re GWSI et al Partial Motion to Dismiss.docx