**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CMPC USA, INC.,**<br>　　*Plaintiff*,<br><br>　　　　　　　　v.<br><br>**GWSI, INC., M. GERACE**<br>**ENTERPRISES, INC., KEVIN BURKE**, in<br>his individual capacity, **& MICHAEL**<br>**GERACE**, in his individual capacity,<br>　　*Defendants*. | Civil Action No. 2:24-cv-2087-MMB |
| **GWSI, INC., & M. GERACE**<br>**ENTERPRISES, INC.,**<br>　　*Counterclaim Plaintiffs*,<br><br>　　　　　　　　v.<br><br>**CMPC USA, INC., CMPC FOREST**<br>**PRODUCTS NA LLC, & CMPC**<br>**CELULOSA S.A.,**<br>　　*Counterclaim Defendants*. | Civil Action No. 2:24-cv-2394-MMB |

**REPORT AND RECOMMENDATION OF THE SPECIAL MASTER REGARDING**
**CMPC CELULOSA S.A.'S MOTION TO DISMISS**
**GWSI, INC. AND M. GERACE ENTERPRISES, INC.'S AMENDED COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 53 and this Court's Orders of March 3, 2025 (ECF No. 113) and March 25, 2025 (ECF No. 121), and upon consideration of the Amended Counterclaims (ECF No. 119) filed by Counterclaim Plaintiffs GWSI, Inc. and M. Gerace Enterprises (collectively, "GWSI"), Counterclaim Defendant CMPC Celulosa S.A.'s ("Celulosa") Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative for Failure to State a Claim (ECF No. 124) (the "Motion"), and GWSI's Response in Opposition (ECF No. 129) (the "Response"), the Special Master submits the following Report and Recommendation on Celulosa's Motion.

# TABLE OF CONTENTS

I.   THE NATURE OF THE ACTION ........................................................................ 1

II.  RELEVANT PROCEDURAL HISTORY ......................................................... 2

    A.  RELEVANT PLEADINGS ............................................................................ 2

        1.  GWSI's Amended Counterclaims against Celulosa ......................... 3

    B.  COUNTERCLAIM CO-DEFENDANT CMPC'S MOTION TO DISMISS ............ 5

    C.  CELULOSA'S MOTION TO DISMISS GWSI'S AMENDED COUNTERCLAIMS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM .................................................................. 6

        1.  Celulosa Moves to Dismiss GWSI's Amended Counterclaims II, IV, and V Pursuant to FED. R. CIV. P. 12(b)(2) ............................... 6

        2.  Alternatively, Celulosa Moves to Dismiss Counts II, IV, and V Pursuant to Fed. R. Civ. P. 12(b)(6) ................................................ 8

III. PERSONAL JURISDICTION PURSUANT TO F.R.C.P. 12(b)(2) .................... 9

    A.  LEGAL STANDARD ..................................................................................... 9

        1.  General Jurisdiction .......................................................................... 10

        2.  Specific Jurisdiction ......................................................................... 10

    B.  ANALYSIS ................................................................................................ 11

        1.  General Jurisdiction .......................................................................... 11

        2.  The Traditional Test for Specific Jurisdiction ................................. 11

        3.  The *Calder* Test for Specific Jurisdiction ...................................... 21

IV.  FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6) ............ 24

    A.  LEGAL STANDARD ................................................................................... 24

    B.  ANALYSIS ................................................................................................ 25

        1.  Promissory Estoppel (Count II) ....................................................... 25

        2.  Fraudulent Misrepresentation (Count IV) ....................................... 27

V.   CONCLUSION ............................................................................................... 29

## I.    **THE NATURE OF THE ACTION**

Defendant CMPC USA, Inc. ("CMPC") is alleged to be "a global company that produces and commercializes forestry products, cellulose, paper, and tissue products" from plantations it manages.  ECF No. 119 ("Am. Countercl.") ¶ 3.  Celulosa is alleged to be "a Chilean corporation" and "a corporate affiliate of CMPC."  Am. Countercl. ¶ 4.  GWSI is "an asset-based logistics company that operates warehouse facilities" and, together with its affiliate, M. Gerace Enterprises, Inc. ("MGE"), it "handles logistics associated with unloading containers from ships, railcars, or trucks that ship cargo, [with] load[ing] long-haul trucks for product transportation, and [with] port drayage, among other things."  Am. Countercl. ¶¶ 9, 11.

GWSI alleges that in March of 2020 "CMPC and Celulosa solicited bids from logistics companies," including GWSI, in connection with "the transportation, storage, and handling of CMPC's shipments of lumber, forsac, pulp, cardboard, and other products from Celulosa in Chile to the United States."  Am. Countercl. ¶ 12.  CMPC and Celulosa's solicitation of those bids (the "Tender") "specified the minimum volume of products CMPC would ship based on its '2019 demand' volumes for storage and transportation or containers of goods" and "sought bids for a three-year commitment for storage and handling of these minimum volumes."  Am. Countercl. ¶ 15.  In response to the Tender, GWSI submitted bids to store and handle "at a minimum, the volumes depicted in the tender" and GWSI alleges that it did so "in reliance on the volumes and commitments set forth in the Tender, as well as CMPC's commitment to ship such volumes under a three-year contract.  [GWSI's] entire bid on the Tender was predicated on CMPC's commitment to ship, at a minimum, the volume depicted in the Tender."  Am. Countercl. ¶¶ 21–22.

The parties appear to agree that, at least for some period of time, CMPC shipped its forestry products to GWSI in Pennsylvania and that GWSI then stored and distributed those products to

recipients designated by CMPC. However, GWSI and CMPC dispute various aspects of their business relationship, the principal dispute being which version of a Warehouse Service Agreement, *if any*, accurately reflects a "meeting of the minds" regarding GWSI's storage and distribution of CMPC's products.

This Report and Recommendation analyzes whether GWSI has established this Court's personal jurisdiction over *Celulosa*, CMPC's corporate affiliate, pursuant to Federal Rule of Civil Procedure 12(b)(2), and, *ergo*, whether Celulosa, can remain a counterclaim defendant in this action. Additionally, this Report and Recommendation analyzes Celulosa's alternative theory for dismissal—whether GWSI has sufficiently stated claims against Celulosa upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    **RELEVANT PROCEDURAL HISTORY**

The above-captioned action has a voluminous procedural history, but the following is most relevant to Celulosa's Motion.

### A.    **RELEVANT PLEADINGS**

On May 17, 2024, GWSI filed a complaint against CMPC in the Court of Common Pleas of Delaware County, Pennsylvania, which CMPC removed to this Court. On June 13, 2024, this Court consolidated the action that CMPC removed with another before this Court which CMPC had initiated earlier against GWSI (2:24-cv-2087-MMB). ECF No. 67.

On November 1, 2024, this Court entered an order directing, *inter alia*, GWSI to answer CMPC's Amended Complaint (ECF No. 40) and to plead any compulsory counterclaims in accordance with Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure. ECF No. 71. On March 21, 2025, GWSI filed its Answer and Counterclaims to CMPC's Amended Complaint (ECF No. 119), in which GWSI pled five counterclaims against CMPC. *See generally* Am. Countercl.

1.    __GWSI's Amended Counterclaims against Celulosa__

In its Amended Counterclaims, GWSI named, for the first time, Celulosa as a party, a counterclaim defendant, to this action.  *See generally* Am. Countercl.  Against Celulosa, GWSI has asserted three causes of action: a claim for promissory estoppel (Count II), a claim for fraudulent misrepresentation (Count IV), and a claim for negligent misrepresentation (Count V). Am. Countercl. ¶¶ 169–174, 187–Prayer for Relief.  The chart below identifies the causes of action GWSI has asserted against CMPC versus those GWSI has asserted against Celulosa.

| GWSI's Am. Counterclaims vs. CMPC | GWSI's Am. Counterclaims vs. CELULOSA |
|---|---|
| ❖ Count I – Breach of Contract;<br>❖ Count II – Promissory Estoppel;<br>❖ Count III – Unjust Enrichment;<br>❖ Count IV – Fraudulent Misrepresentation;<br>❖ Count V – Negligent Misrepresentation. | ——<br>❖ Count II – Promissory Estoppel;<br><br>——<br>❖ Count IV – Fraudulent Misrepresentation;<br>❖ Count V – Negligent Misrepresentation. |

With respect to GWSI's promissory estoppel claim (Count II), GWSI states, *inter alia*, that "CMPC and/or Celulosa promised to ship a minimum volume of containers [to GWSI] and agreed to pay shortfall penalties for its failure" to do so, which, GWSI alleges, it reasonably relied on to GWSI's detriment.  Am. Countercl. ¶¶ 171, 173–174.[1]  So as to redress the alleged harm GWSI

---

[1] GWSI pled its promissory estoppel claim against both CMPC and Celulosa as an alternative cause of action, only to be considered "in the event it is determined that [GWSI has] no remedy at law[.]" Am. Countercl. ¶ 170.  For the reasons stated more fully in this Special Master's Report and Recommendation on CMPC's Motion to Dismiss (ECF No. 130), GWSI was permitted to plead its promissory estoppel claim against CMPC as an alternative to its breach of contract claim (Count I) against CMPC.  Rep. & Rec. at 9–11; *see also* ECF No. 134 (adopting the Report and Recommendation in its entirety).

However, while GWSI pled both its breach of contract (Count I) and its promissory estoppel (Count II) claims against *CMPC*, GWSI pled *only* a promissory estoppel claim (Count II) against *Celulosa*. *See* Am. Countercl. ¶¶ 154–168.  Therefore, as against Celulosa, it is unclear what claim, if any, GWSI pleads its promissory estoppel (Count II) claim "in the alternative" to, as GWSI does not plead any other contractual cause of action against Celulosa.  It is, likewise, unclear whether

claims it suffered as a result of CMPC's and Celulosa's alleged conduct, GWSI seeks damages against both CMPC and Celulosa.  Am. Countercl. ¶¶ 168–174, Prayer for Relief ¶ 1.

In respect of GWSI's claims based on tortious theories of liability, fraudulent misrepresentation (Count IV) and negligent misrepresentation (Count V), GWSI asserts that Celulosa "knowingly and willfully misrepresented" to GWSI "CMPC['s] commit[ment] to ship and store with [GWSI] a minimum volume of products" over a period of time.  Am. Countercl. ¶ 188.  GWSI also alleges that Celulosa "led" GWSI "to believe that CMPC would ship minimum volumes and pay shortfalls for [CMPC's] failure to ship minimum volumes[,]" which GWSI claims it justifiably relied on to its detriment.  Am. Countercl. ¶ 191.  As a result of the harm that GWSI claims CMPC and Celulosa's allegedly fraudulent misrepresentation caused it, GWSI pursues compensatory, consequential, and exemplary damages against CMPC and Celulosa.  Am. Countercl. ¶ 194.

With regard to GWSI's claim for negligent misrepresentation (Count V), GWSI avers that "CMPC and Celulosa made misrepresentations and omissions of material fact" to GWSI, which CMPC and Celulosa knew or should have known were false but made them anyway with the intent to induce GWSI to rely on the misrepresentations and omissions to GWSI's own detriment.  Am. Countercl. ¶¶ 1–6 at p. 67.

---

GWSI pleads its promissory estoppel claim (Count II) against both CMPC and Celulosa as an alternative only to GWSI's breach of contract claim that it has asserted against only CMPC (Count I).  The Special Master notes this only to dispel any future argument that the Court's personal jurisdiction over Celulosa is somehow affected by the manner in which GWSI styled its promissory estoppel claim (Count II).  To be clear, this Court's exercise of personal jurisdiction over Celulosa is unaffected by the nature—affirmative or alternative—of GWSI's promissory estoppel claim (Count II).

### B.    COUNTERCLAIM CO-DEFENDANT CMPC'S MOTION TO DISMISS

Pursuant to this Court's Order of March 3, 2025 (ECF No. 113), and upon consideration of GWSI's Amended Counterclaims (ECF No. 119), CMPC's Partial Motion to Dismiss (ECF No. 123), GWSI's Response in Opposition (ECF No. 127), and CMPC's Reply (ECF No. 128), the Special Master submitted a Report and Recommendation recommending that the Court enter an order granting in part and denying in part CMPC's Partial Motion to Dismiss GWSI's Amended Counterclaims.  ECF No. 130.  Specifically, the Report and Recommendation recommended denying CMPC's request to dismiss GWSI's quasi-contractual counterclaims (Counts II and III) because a dismissal of those claims would have been premature and contradictory to the alternative pleading latitude afforded to litigants by Federal Rule of Civil Procedure 8.  Rep. & Rec. 7–12, 21.  The Report and Recommendation also recommended denying CMPC's request to dismiss GWSI's fraudulent misrepresentation claim (Count IV) because the uncertainty surrounding the existence of an enforceable contract between GWSI and CMPC necessarily allowed for the possibility that the gist of the action doctrine may not ever apply to Count IV.  Rep. & Rec. 15–18.

Unlike its recommendation to deny CMPC's motion to dismiss Counts II, III, and IV, the Report and Recommendation recommended that the Court grant CMPC's motion only with respect to GWSI's negligent misrepresentation claim (Count V) against CMPC.  Rep. & Rec. The Special Master recommended dismissing Count V because such a claim could not proceed as a matter of law as it was barred under the economic loss doctrine.  Rep. & Rec. 19–21, 22.

On July 7, 2025, the Court overruled CMPC's objections to the Special Master's Report and Recommendation and adopted the Report and Recommendation in its entirety.  ECF No. 134.  Notably, the Court dismissed Count V with prejudice.  ECF No. 134.

### C. CELULOSA'S MOTION TO DISMISS GWSI'S AMENDED COUNTERCLAIMS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM

On April 4, 2025, Celulosa filed its Motion requesting the dismissal of all three amended counterclaims asserted against it.  ECF No. 124.  On April 18, 2025, GWSI filed its Response in opposition.  ECF No. 129.  Briefing on Celulosa's Motion concluded with GWSI's Response in opposition; Celulosa did not file a reply.

### 1. Celulosa Moves to Dismiss GWSI's Amended Counterclaims II, IV, and V Pursuant to FED. R. CIV. P. 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Celulosa moves to dismiss GWSI's amended counterclaims for promissory estoppel (Count II), for fraudulent misrepresentation (Count IV), and for negligent misrepresentation (Count V).[2]  *See generally* Mot. 1–16.

---

[2] As discussed, *supra* at Section II (B), after Celulosa and GWSI briefed the instant Motion, the Special Master filed the Report and Recommendation regarding CMPC's Partial Motion to Dismiss.  ECF No. 130.  The Report and Recommendation recommended dismissing GWSI's Amended Counterclaim for negligent misrepresentation (Count V) against CMPC because the economic loss doctrine required the claim's dismissal as a matter of law.  Rep. & Rec. 19–21.  On July 7, 2025, this Court entered an order adopting the Report and Recommendation's analysis of Count V and dismissed Count V with prejudice.  ECF No. 134.

The Special Master incorporates herein by reference its analysis of Count V contained in its June 11, 2025 Report & Recommendation as well as this Court's Order dismissing Count V with prejudice.  GWSI's claim for negligent misrepresentation (Count V) against Celulosa cannot survive Rule 12(b)(6) for the same reasons the claim, as pled against CMPC, could not survive.  As a matter of law, GWSI cannot pursue its claim for negligent misrepresentation against either CMPC or Celulosa as such a claim is barred under the economic loss doctrine.  Rep. & Rec. 19–21.  Moreover, because this Court has previously dismissed GWSI's Count V as asserted against CMPC, the allegations of GWSI's Count V as pled against Celulosa are identical to those it pled against CMPC, and there is no intervening change in the law requiring a different result, the doctrine of "the law of the case" applies here and moots the need for any new analysis of GWSI's Count V as asserted against Celulosa.  *See In re Continental Airlines, Inc.*, 279 F.3d 226, 232–33 (3d Cir. 2002) ("The doctrine of the law of the case . . . . 'posits that when a court decided upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'  This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'") (internal citations omitted)).  Accordingly, the Special Master refrains from analyzing Count V anew and, instead, recommends that the Court

First, Celulosa argues that this Court lacks *general personal jurisdiction* over Celulosa because GWSI has failed to plead factual allegations sufficient to establish that Celulosa had "continuous and systematic" contacts with the forum state such that courts in Pennsylvania could exercise jurisdiction over it.  Mot. 6–7.  According to Celulosa, GWSI's averment that Celulosa is a Chilean company (Am. Countercl. ¶ 4) precludes a finding of general jurisdiction because this allegation forecloses any argument by GWSI that Celulosa's place of incorporation or principal place of business is in Pennsylvania.  Mot. 7.

Second, Celulosa argues that this Court lacks *specific personal jurisdiction* over it because, *inter alia*, GWSI's factual allegations against Celulosa fall short of meeting the requirements of the traditional test for personal jurisdiction and, to the extent applicable, the requirements of the *Calder* test for specific jurisdiction.  Mot. 7–15.

Celulosa alternatively moves to dismiss the same counterclaims—promissory estoppel (Count II), fraudulent misrepresentation (Count IV), and negligent misrepresentation (Count V)— pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  Mot. 16–17.

          i.          <u>GWSI's Opposition to Celulosa's Motion Pursuant to 12(b)(2)</u>

In opposition to Celulosa's Motion, GWSI argues that this Court can, in fact, exercise specific, personal jurisdiction over Celulosa pursuant to the traditional test for personal jurisdiction.  Resp. 7–14.  According to GWSI, what is critical is that Celulosa "solicited a bid from" GWSI, a corporation with  principal place of business in Pennsylvania, "for logistics services in which [Celulosa] made representations about minimum volumes; Celulosa shipped its

---

grant Celulosa's Motion against GWSI's claim for negligent misrepresentation (Count V) with prejudice, as such a claim cannot proceed as a matter of law.

good to GWSI's warehouse in *Pennsylvania*; Celulosa negotiated minimum volumes and supplemental agreements" via telephone and e-mail with GWSI's representatives who were physically located in Pennsylvania, and "Celulosa representatives *visited Pennsylvania* on multiple occasions to discuss its commitments to ship a minimum volume of containers or pay shortfall penalties." Resp. 12 (italicized emphasis in original).

In opposition to Celulosa's argument that GWSI failed to plead sufficient factual allegations to satisfy the *Calder* test for personal jurisdiction, GWSI argues that Celulosa misapplies *Calder*, incorrectly blending its elements with those of the traditional test for jurisdiction. Resp. 13. Furthermore, GWSI maintains that its factual allegations regarding Celulosa's allegedly fraudulent misrepresentation (Count IV) and negligent misrepresentation (Count V) sufficiently satisfy a proper *Calder* analysis such that this Court retains personal jurisdiction over Celulosa under either jurisdictional test.

### 2. **Alternatively, Celulosa Moves to Dismiss Counts II, IV, and V Pursuant to Fed. R. Civ. P. 12(b)(6)**

In the event the Court were to deny Celulosa's Motion to Dismiss pursuant to Rule 12(b)(2), Celulosa has presented an alternative argument that the Court should dismiss GWSI's amended counterclaims for promissory estoppel (Count II), fraudulent misrepresentation (Count IV), and negligent misrepresentation (Count V) for GWSI's failure to state claims upon which relief may be granted. Mot. 16–17.

In opposition to this alternative argument under Rule 12(b)(6), GWSI argues that its Amended Counterclaims do contain the requisite factual averments for such causes of action and are, otherwise, consistent with applicable law. Resp. 17–20.

III.    **PERSONAL JURISDICTION PURSUANT TO F.R.C.P. 12(b)(2)**

A.    **LEGAL STANDARD**

Once personal jurisdiction is challenged, the burden shifts to the plaintiff to establish that the court does, in fact, have personal jurisdiction over the non-resident defendant. *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). If the court does not hold an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction "with reasonable particularity" in order to satisfy its burden. *Id.* To do this, the "plaintiff must demonstrate, through sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction." *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984). Additionally, the Court must take a plaintiff's allegations as true and must construe all disputed facts in the plaintiff's favor. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

This Court may exercise personal jurisdiction over an out-of-state defendant via Pennsylvania's long arm statute which provides that "its reach is coextensive with the limits placed on the states by the federal Constitution." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing 42 PA. CONS. STAT. ANN. § 5322(b)). Accordingly, this Court exercises personal jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States … based on the [non-resident's] most minimum contact" with the forum state that the Constitution permits. 42 PA. CONS. STAT. ANN. § 5322(b); *MetroPCS, a Brand of T-Mobile USA, Inc. v. Thomas*, C.A. No. 17-4557, 2018 WL 100017, at *3 (E.D. Pa. Feb. 21, 2018) (Baylson, J.).

### 1.    <u>General Jurisdiction</u>

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017); *O'Connor*, 496 F.3d at 317. To find general, personal jurisdiction, a defendant's contacts with a forum state must be so "continuous and systematic" that the defendant is "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### 2.    <u>Specific Jurisdiction</u>

Alternatively, specific jurisdiction is found when the suit itself arises out of or relates to the defendant's contacts with the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Goodyear Dunlop*, 564 U.S. at 919. A plaintiff will establish a *prima facie* case of specific personal jurisdiction by showing:

> (1) the defendant "purposefully directed [its] activities" towards the forum state;
>
> (2) the litigation "arise[s] out of or relate[s] to" at least one of those activities; and
>
> (3) if the prior two requirements are met, courts may examine whether the exercise of jurisdiction otherwise comports with traditional notions of "fair play and substantial justice."

*O'Connor*, 496 F.3d at 317; *see also IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) ("In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must satisfy a two-part test. First the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts with the forum. Second, . . the court must determine, in its discretion, 'that [its exercise of jurisdiction] would comport with 'traditional notions of fair play and substantial justice.'") (internal citations omitted)).

### B.    ANALYSIS

#### 1.    General Jurisdiction

Celulosa moves to dismiss GWSI's Amended Counterclaims based on what it claims is the Court's lack of general, personal jurisdiction. Mot. 6–7. Celulosa argues that it is not subject the Court's general, personal jurisdiction because Celulosa is not incorporated in Pennsylvania and does not maintain its principal place of business in Pennsylvania. Mot. 6. Celulosa argues that, for those reasons, GWSI has failed to allege, much less establish, that Celulosa maintains "continuous and systematic' contacts with Pennsylvania such that it could be considered "at home" there, and thus susceptible to the Court's general, personal jurisdiction over it. Mot. 7.

GWSI does not respond to Celulosa's argument regarding general, personal jurisdiction. Because long-arm jurisdiction may ultimately be established *either* by general or personal jurisdiction, the absence of one does not foreclose the existence of the other. In other words, GWSI's failure to oppose Celulosa's arguments regarding general jurisdiction does not per force lead to an order dismissing GWSI's Amended Counterclaims for lack of personal jurisdiction as specific, personal jurisdiction may exist irrespective of the existence, or not, of general, personal jurisdiction.

#### 2.    The Traditional Test for Specific Jurisdiction

Under the traditional test for specific, personal jurisdiction, GWSI must make a *prima facie* showing that (i) Celulosa "purposefully directed [its] activities" at Pennsylvania; (ii) the litigation "arise[s] out of or relate[s] to" at least one of those activities; and (iii) if the prior two requirements are met, the Court may consider whether the exercise of jurisdiction over Celulosa otherwise comports with traditional notions of "fair play and substantial justice." *O'Connor*, 496 F.3d at 317.

A Court "is required to make an independent factual assessment of a defendant's contacts with the forum when deciding whether it possesses jurisdiction over that defendant. Each case must be judged on its particular facts." *Mellon Bank*, 960 F.2d at 1224. "[Q]uestions of personal jurisdiction do not lend themselves to categorical determinations. There are no general rules governing whether or not guarantors of contractual obligations fall within the constitutional power of the courts of a particular forum." *Id.* at 1224–25.

Here, GWSI has in fact established each of these elements such that the Court's exercise of specific, personal jurisdiction over Celulosa is proper.

        i.   <u>Celulosa "Purposefully Directed" Its Activities Towards Residents of Pennsylvania</u>

> The 'constitutional touchstone' of personal jurisdiction is 'whether the defendant purposefully established minimum contacts in the forum State.' The determination of whether minimum contacts exist requires an examination of 'the relationship among the forum, the defendant and the litigation,' in order to determine whether the defendant has 'purposefully directed' its activities toward residents of the forum.

*Vetrotex Certainteed Corp.*, 75 F.3d at 150 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (internal citations omitted).

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King Corp.*, 471 U.S. at 476; *see also Mellon Bank*, 960 F.2d at 1225 ("When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'").

Although "the fact that a non-resident [] contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident[,] [t]he requisite contacts, [], may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank*, 960 F.2d at 1223.

Here, based on the pertinent allegations which must be credited for this analysis, Celulosa knew or should have known that it was directing its activities towards Pennsylvania such that its activities would satisfy the first element of the traditional test for specific jurisdiction, which is "purposeful direction."

***First***, it is alleged that Celulosa solicited bids from entities located in Pennsylvania. GWSI alleged that "[i]n March 2020, CMPC and Celulosa solicited bids from logistics companies, including [from] GWSI [], in connection with the transportation, storage, and handling of CMPC's shipments of lumber, forsac, pulp, cardboard, and other products from Celulosa in Chile to the United States." Am. Countercl. ¶ 12. "CMPC's and Celulosa's Tender was sent to [GWSI] in which CMPC and Celulosa asked [GWSI] to submit a bid for storage and transportation of a minimum volume of shipment of CMPC's goods." Am. Countercl. ¶ 13. Such an action—sending a Tender to GWSI, an entity maintaining its principal place of business in Pennsylvania— constitutes a purposeful direction of an activity in the forum state because it inherently involves Celulosa's targeting of a Pennsylvania entity to do business with it. Although "the fact that a non-

resident [] contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident" (*Mellon Bank*, 960 F.2d at 1223), "[o]ur Court of Appeals has found specific jurisdiction exists when a non-resident defendant 'deliberately reache[s] into Pennsylvania to target ... its citizens.'" *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 499 (E.D. Pa. 2021) (citing *O'Connor*, 496 F.3d at 317) (Kearney, J.)).

**Second**, it is clear from the allegations that Celulosa knew or should have known that it was communicating with entities, GWSI and MGE, that each maintained principal places of business in Pennsylvania. Here, GWSI had alleged that it maintained a principal place of business in Pennsylvania (Am. Countercl. ¶¶ 1–2) and that it "operate[d] warehouse facilities in various locations … including in Chester, Pennsylvania … ." Am. Countercl. ¶ 9. Moreover, GWSI alleged that after CMPC accepted GWSI's bid on CMPC and Celulosa's Tender (Am. Countercl. ¶ 24) CMPC, Celulosa's corporate affiliate, "began using [GWSI] to ship [] and store its goods in [] GWSI's Chester, Pennsylvania warehouse." Am. Countercl. ¶ 27. It is further alleged that CMPC shipped its goods from Celulosa's locations in Chile to GWSI in Chester, Pennsylvania (Am. Countercl. ¶¶ 12–13), and that GWSI discussed with "CMPC and Celulosa … [the] volumes, transportation assets, and warehouse square footage" that were needed to service "CMPC's business needs." Am. Countercl. ¶ 29.

The address of GWSI's principal office in Chester, Pennsylvania also appeared on all versions of the Warehouse Services Agreement that Celulosa, CMPC, and GWSI negotiated.[3] Am.

---

[3] One dispute in the above-captioned action concerns which version of the Warehouse Services Agreement, if any, constitutes an enforceable agreement such that CMPC's alleged failure to ship volumes of goods in excess of a contractually contemplated minimum quantity could be actionable.

Any argument by Celulosa that, because it is not signatory to either version of the Warehouse Services Agreement, these documents cannot serve as factual support for this Court's exercise of

Countercl. ¶¶ 62–63; *see also* Am. Countercl. at Ex. B § "Parties" ¶ 2 (defining GWSI as "a company incorporated and registered in Nevada whose principal business address is at 800 West Front Street Chester, PA, 19013."); *id.* at Ex. C ¶ "Parties" ¶ 2 (containing the same definition for GWSI in the version of the Warehouse Services Agreement that GWSI alleges CMPC believed was the parties' operative agreement).[4]   Accordingly, although Celulosa's solicitation of bids from Pennsylvania entities might be, without more, insufficient to establish this Court's specific, personal jurisdiction over Celulosa, here it is alleged that Celulosa engaged in significantly more conduct than merely soliciting bids from Pennsylvania entities.  After Celulosa solicited a bid from GWSI and MGE, Celulosa negotiated with GWSI and MGE to procure a business relationship with them whereby the parties would maintain obligations to one another concerning the subject goods into the future.  Am. Countercl. ¶¶ 12, 37, 40, 53, 62–63, 89, 90.  In fact, GWSI alleges that representatives of Celulosa physically traveled to Pennsylvania to meet with GWSI concerning the contracts at issue in this action.  Am. Countercl. ¶ 97.  This conduct in all events is sufficiently "purposeful" and "directed toward" Pennsylvania to satisfy the first element of the traditional test for specific jurisdiction.  *See Burger King Corp.*, 471 U.S. at 462, 475–76 ("Thus where the

---

specific, personal jurisdiction over it, is unavailing here.  GWSI alleges that Celulosa was involved in the negotiations of these Warehouse Services Agreements (Am. Countercl. ¶¶ 12, 37, 40, 53, 62–63, 89, 90, 97), so whether or not Celulosa ultimately signed the Warehouse Services Agreement is not dispositive as to the Court's analysis of specific jurisdiction.  Regardless of whether Celulosa signed the Warehouse Services Agreements, Celulosa still purposefully directed its activities toward GWSI, a Pennsylvania entity, to facilitate an ongoing business relationship with GWSI regarding the transportation and storage of goods and logistics services, all of which was to occur in Pennsylvania.

[4] Both versions of the Warehouse Services Agreement also contemplate the storage of goods at GWSI's warehouse facility located in Chester, Pennsylvania.  *See* Am. Countercl. at Ex. B § Schedule 1 – Warehouse Locations (listing "GWSI Inc.[,] Chester PA 19013[,] Minimum Storage Capacity 120,000 Square Feet" as the first warehouse location where goods would be stored); *see also* Am. Countercl. at Ex. C § Schedule 1 (same).

defendant 'deliberately has engaged in significant activities within a State, **or has created 'continuing obligations' between himself and residents of the forum**, he manifestly has availed himself of the privilege of conducting business there, and … it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.") (citing *Travelers Health Assn. v. Virginia*, 339 U.S. at 648)) (bolded emphasis added)); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.") (internal citations omitted).

*Third*, all versions of the Warehouse Services Agreement put forward by the parties contain choice of law provisions that explicitly require the application of Pennsylvania law to disputes between them and venue provisions that explicitly subject the parties to the jurisdiction of courts sitting within Pennsylvania. The Warehouse Services Agreement that GWSI believes to be the operative agreement, contained the following language:

> Governing Law and Jurisdiction — Sec. 21
>
> This Contract and the legal relationship between the parties hereto shall be governed by and construed in accordance with the substantive laws of the state where the Facility is located, including Article 7 of the Uniform Commercial Code as ratified in Pennsylvania, … . Any lawsuit or other action involving any dispute, claim or controversy relating in any way to this Contract shall be brought only in the appropriate state or federal court in the state of Pennsylvania.

Am. Countercl. at Ex. B § 21. The iteration of the Warehouse Services Agreement that GWSI alleges that CMPC, for its part, believed to be the operative version likewise contains language explicitly subjects the parties, CMPC and GWSI, to the jurisdiction of courts in Pennsylvania. *See* Am. Countercl. at Ex. C § 20 (requiring the "Contract and legal relationship" of the parties thereto to be governed by "the laws of the state where the GWSI warehouse is located, including Article

7 of the [UCC] as ratified in Pennsylvania, … .  Any lawsuit … relating in any way to this Contract shall be brought only in the appropriate state or federal court in the state where the warehouse facility is located.").

While choice of law provisions, on their own, may not be deemed sufficient without more to confer personal jurisdiction on a non-resident defendant, "[n]othing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes." *Burger King Corp.*, 471 U.S. at 482.  When a choice of law provision exists and is coupled with other purposeful contacts with the forum state, the choice of law provision may "reinforce[]" a defendant's "deliberate affiliation with the forum State and [reinforce] the reasonable foreseeability of possible litigation there."  *Id.*; *id* at 472, n.14 ("[T]here are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.  For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction.  Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process.") (internal citations omitted).  Accordingly, where, as here, it is alleged that Celulosa was involved in negotiating a contract with Pennsylvania-based entities that required the signatories thereto to submit the jurisdiction of courts in Pennsylvania and to adjudicate disputes pursuant to Pennsylvania law, these provisions in the Warehouse Services Agreements may properly be seen as "reinforc[ing]" the deliberateness with which Celulosa availed itself to Pennsylvania.  *Mellon Bank*, 960 F.2d at 1223 ("[t]he requisite contacts, [for jurisdiction], may be supplied by the terms of the agreement,

the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties.").

Accordingly, it is clear from the factual allegations in GWSI's Amended Counterclaims as well as from the exhibits attached to GWSI's Response, particularly when such allegations must be, "taken as true and all factual disputes drawn in [GWSI's] favor," that GWSI has sufficiently alleged that Celulosa purposefully directed its activities towards residents of Pennsylvania, which satisfies the first element of the traditional test for specific, personal jurisdiction.

    ii.    <u>GWSI's Amended Counterclaims Arise Out of Celulosa's Contacts with the Forum State</u>

GWSI asserts two amended counterclaims against Celulosa—a claim for promissory estoppel (Count II) and a claim for fraudulent misrepresentation (Count IV).[5]  Here, both causes of action are alleged to "arise out of" the contract negotiations and the business relationship that Celulosa developed with GWSI concerning the transportation and storage of goods located in Pennsylvania and the logistics services needed to export those goods to their final destinations.

> In determining whether a claim arises out of or relates to a given contact, 'the analysis may begin' with a 'but-for' causation inquiry in which the court considers whether 'the plaintiff's claim would not have arisen in the absence of the defendant's contacts.'  However, although the 'but-for' inquiry may be a starting point, '[t]he animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable.'  In other words, [o]ut-of-state residents who exercise the privilege of conducting activities within a state... enjoy[ ] the benefits and protection of the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities.

---

[5] GWSI also pleads an amended counterclaim against Celulosa for negligent misrepresentation (Count V), but because this Court previously ruled that this claim cannot proceed as a matter of law pursuant to the economic loss doctrine (ECF No. 134), this Report and Recommendation does not analyze whether GWSI's negligent misrepresentation cause of action (Count V) "arises out of" Celulosa's purposeful contacts with Pennsylvania.  *In re Continental Airlines, Inc.*, 279 F.3d 226, 232–33 (3d Cir 2002).

*Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 644 (E.D. Pa. 2018) (Leeson, J.) (citing *O'Connor*, 496 F.3d at 317–19, 322) (internal citations omitted)). Here, it is clear that the representations which it is said Celulosa made to GWSI concerning minimum volumes, the ability of CMPC, Celulosa's corporate affiliate, to surpass those minimum volumes, and CMPC's agreement to pay contractually prescribed shortfall penalties if the volumes fell below those minimums, all "arise out of" Celulosa's contacts with Pennsylvania, namely, that conduct which Celulosa undertook so as to do business in Pennsylvania and with GWSI. Here, GWSI has alleged that Celulosa *did* direct itself to Pennsylvania to procure a business relationship with GWSI, and GWSI's claims arise out of representations Celulosa allegedly made during the development of and within the confines of that relationship.

Accordingly, GWSI has established that the second element of the traditional test for specific jurisdiction has been satisfied.

iii.     <u>This Court's Exercise of Specific, Personal Jurisdiction Over Celulosa is Consistent with Traditional Notions of Fair Play and Substantial Justice</u>

Only after a court determines the first two elements of the traditional test for specific jurisdiction have been met—purposeful activities toward the forum state and claims arising out of those activities—a court may yet consider whether the exercise of specific, personal jurisdiction over the non-resident defendant comports with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317. To make this determination, a court may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of the controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *M3 USA Corp.*, 516 F. Supp. 3d at 495 (citing *Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 721 (E.D. Pa. 2015)

(Kearney, J.)).   "When jurisdiction is otherwise constitutional, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *M3 USA Corp.*, 516 F. Supp. 3d at 495 (citing *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355–56 (E.D. Pa. 2016) (McHugh, J.)).

Here, Celulosa argues that in all events this Court's exercise of personal jurisdiction would offend the principles of "fair play" and "substantial justice" because of "the excessive burden on Celulosa as compared to its minimal contacts with Pennsylvania—and especially given that GWSI admits that its contractual relationship was with CMPC USA" and not with Celulosa.  Mot. 13. However, Celulosa says nothing more to substantiate its conclusion that defending GWSI's counterclaims asserted against it would constitute an "excessive burden" on Celulosa. Additionally, for the reasons stated *supra* n.3, the fact that Celulosa may not have ultimately signed the agreements at issue in this case does not negate all of Celulosa's other contacts with Pennsylvania.  Again, for the limited purposes of this Motion, the pertinent allegations are that Celulosa purposefully directed the following contacts towards Pennsylvania: (i) Celulosa solicited bids here; (ii) Celulosa negotiated contracts with Pennsylvania based entities (GWSI and MGE); (iii) Celulosa negotiated contracts that were intended to govern the parties' obligations regarding the shipment of goods into Pennsylvania, the storage of goods in Pennsylvania, and then the eventual transportation of those goods from Pennsylvania to their final destinations elsewhere; and (iv) Celulosa representatives traveled to Pennsylvania to negotiate issues related to a business relationship with GWSI.  Accordingly, whether or not Celulosa signed the final iterations of the disputed contracts is of no moment.  For these reasons, Celulosa's arguments against this Court's exercise of specific, personal jurisdiction over it are unavailing.

In further support of this Court's exercise of personal jurisdiction over Celulosa, it may be noted that Pennsylvania has an interest in adjudicating contract disputes and torts that allegedly occur within the state. GWSI and MGE each maintain a principal place of business in Pennsylvania, and GWSI received and stored the goods at issue in this case in Pennsylvania.

Additionally, CMPC—Celulosa's corporate affiliate—initiated its own action in this forum. Thus, the Court's interest in efficiently resolving cases would not be advanced by declining to exercise personal jurisdiction over Celulosa because such a determination would sever from this action GWSI's amended counterclaims against Celulosa, cause GWSI to pursue those same claims against Celulosa elsewhere, and would be fundamentally inconsistent with the fact that these counterclaims are manifestly factually and procedurally entangled with GWSI's counterclaims that it has asserted against Celulosa's corporate affiliate, CMPC.[6] Accordingly, this Court's exercise of specific jurisdiction over Celulosa will not offend the traditional notions of "fair play" and "substantial justice."

### 3. The *Calder* Test for Specific Jurisdiction

If a defendant's "contacts with the forum alone ... are far too small to comport with the requirements of due process under [the] traditional" test for specific, personal jurisdiction, then the plaintiff can still use what is called the "effects test" to try to establish the propriety of a court's exercise of personal jurisdiction over a non-resident defendant. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Under the "effects test" created in *Calder v. Jones*, 465 U.S. 783 (1984), "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." *IMO Indus., Inc.*, 155 F.3d at 261. As per *Marten v. Godwin*,

---

[6] *See supra* n.1.

> A plaintiff [can] demonstrate personal jurisdiction if he or she shows:
>
> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.* (citing *IMO Indus.*, 155 F.3d at 265–66).

The Third Circuit has explained the relationship between the "effects test" of *Calder* and the traditional test for personal jurisdiction, as follows:

> *Calder* did not change the fact that even in intentional tort cases the jurisdictional inquiry 'focuses on the relations among the defendant, the forum, and the litigation.' **Nor did *Calder* carve out a special intentional torts exception to the traditional specific jurisdiction analysis**, so that a plaintiff could always sue in his or her home state.

*IMO Indus.*, 155 F.3d at 265 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) (bolded emphasis added)). *Calder* recognizes that a plaintiff's residence in the forum "may, because of [the] defendant's relationship with the plaintiff, enhance [the] defendant's contacts with the forum" because the plaintiff's residence is "the focus of the defendant['s]" contacts from which the suit arises. *Id.*

Simply put, *Calder's* "effects test" is intended to "prevent[] a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state [although] the defendant did not expressly aim his conduct at that state." *Marten*, 499 F.3d at 297. However, here, because Celulosa *had* purposefully directed sufficient contacts towards Pennsylvania to satisfy the traditional test for personal jurisdiction, thereby mooting any risk that Celulosa is haled into court where it did not aim its conduct, the factual predicates for a proper

application of the *Calder* "effects test" are not present.  Accordingly, this Court need not analyze its exercise of personal jurisdiction over Celulosa under *Calder* where, as here, all three elements of the traditional test for specific jurisdiction have been satisfied.  Because GWSI has met its burden of making a *prima facie* showing of specific, personal jurisdiction over Celulosa pursuant to the traditional test, an analysis of personal jurisdiction under *Calder* and its progeny is unnecessary.[7]

For the foregoing reasons, the Special Master recommends that this Court deny Celulosa's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

---

[7] GWSI correctly noted *Calder's* inapplicability.  *See* Resp. 12 (arguing "*Calder*, [] is **only** applied in circumstances where there is not jurisdiction under the traditional test for an intentional tortfeasor.").

**IV.**    **<u>FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6)</u>**

Celulosa has also moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), GWSI's amended counterclaims for promissory estoppel (Count II), fraudulent misrepresentation (Count IV), and negligent misrepresentation (Count V). Mot. 16–17. Celulosa argues that GWSI has failed to allege "any facts whatsoever to suggest that Celulosa made any specific promises or representations to support any of GWSI's claims against it[.]" Mot. 16. Celulosa also argues that GWSI "improperly lumps CMPC USA and Celulosa together, failing to distinguish between the actions of each defendant" yet Celulosa goes on to "join[] and adopt[] in full Sections I, III, IV, and V of CMPC USA's [] Motion to Dismiss[.]" Mot. 17.

In response, GWSI argues, *inter alia*, that its claims for promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation are each sufficiently pled per the plausibility standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Resp. 17–18.

**A.    LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While pleadings need only consist of "short and plain statements[,]" such statements must sufficiently show that the pleader's entitlement to relief is facially plausible, not merely possible. *Twombly*, 550 U.S. at 557. Although "plausibility" is a "context-specific" standard, causes of action that are pled with sufficient factual support but are unavailable to the pleader as a matter of law will not meet it. *See id.* at 552 (requiring a pleading to "state a claim *upon which relief can be granted*") (emphasis added).

When analyzing a pleading's sufficiency under Rule 12(b)(6), the Court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *New Jersey Carpenters & the Trs. Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Although the Court must accept all factual allegations as true, this requirement does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. Pleadings must include factual allegations to support each *prima facie* element of each legal claim asserted. *Phillips*, 515 F.3d at 234; *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1216, pp. 235–236 (3d. ed. 2004)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 556 n.3) ("[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B.      ANALYSIS**

**1.      <u>Promissory Estoppel (Count II)</u>**

To state a claim for promissory estoppel, a plaintiff must set forth factual allegations that:

(1) the defendant made a promise that it should have reasonably expected to induce action or forbearance on the part of the plaintiff;

(2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and

(3) injustice can be avoided only by enforcing the promise.

*Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 431 (E.D. Pa. 2016) (Goldberg, J.) (citing *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 (Pa. Super. 2005)).  Here, GWSI has sufficiently pled all three *prima facie* elements of a claim for promissory estoppel.

GWSI pled that, together, CMPC and Celulosa generated a Tender that sought bids based on "average quantit[ies] of material to be stored[.]"  Am. Countercl. ¶¶ 12–13, 14.  Specifically, GWSI alleged that CMPC and Celulosa's Tender "specified the minimum volume of products CMPC would ship based on its [2019] volumes for storage and transportation of containers of goods, and [the Tender] sought bids for a three-year commitment for storage and handling of these minimum volumes."  Am. Countercl. ¶ 15; *see also* Am. Countercl. ¶ 171 ("CMPC and/or Celulosa promised to ship a minimum volume of containers and agreed to pay shortfall penalties for its failure to ship such minimum volumes.").  These allegations sufficiently state that Celulosa made a promise, of requisite specificity, to GWSI that Celulosa "should have reasonably expected" would induce GWSI to act in reliance upon, in satisfaction of the first *prima facie* element of a promissory estoppel claim.

Next, GWSI pled that it did, in fact, take action in reliance on CMPC and Celulosa's promise regarding minimum volumes.  GWSI alleged that it "guaranteed rates, space, and assets for CMPC[.]"  Am. Countercl. ¶¶ 42, 52; *see also id.* at ¶ 76 ("Under both versions of the Warehouse Services Agreement, [GWSI] committed, at significant expense and with CMPC's knowledge and agreement to secure sufficient assets and capacity to store and handle the minimum volumes CMPC committed to ship[.]"); *id.* at ¶¶ 85–86.  These allegations sufficiently allege the second *prima facie* element of a promissory estoppel claim.

As for the third and final element of a promissory estoppel claim—that injustice may only be avoided through enforcement of Celulosa's promise—GWSI alleges that it "will continue to

suffer significant and foreseeable consequential damages arising directly out of [GWSI's] reliance on CMPC's and Celulosa's promises, including, but not limited to, millions of dollars expended on leases, trucks, trailers, and other equipment[.]"  Am. Countercl. ¶ 174; Resp. 18.

Accordingly, GWSI's allegations are sufficient to state a claim of promissory estoppel against Celulosa.

### 2.    Fraudulent Misrepresentation (Count IV)[8]

To establish a claim for fraudulent misrepresentation, a plaintiff must show:

(1) a misrepresentation,

(2) a fraudulent utterance thereof,

(3) an intention by the maker that the recipient will thereby be induced to act,

(4) justifiable reliance by the recipient upon the misrepresentation and

(5) damage to the recipient as the proximate result.

*Williams v. Cyberonics, Inc.*, 654 F. Supp. 2d 301, 308–09 (E.D. Pa. 2009), *aff'd*, 388 F. App'x 169 (3d Cir. 2010); *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992).  The claim of fraudulent misrepresentation contains a *scienter* element.  In other words, the claim requires a showing that the maker of the misrepresentation knew or believed the matter to be different from what was represented at the time the maker uttered it.  RESTATEMENT (SECOND) OF TORTS § 526 (1977); *see also id.* ("A misrepresentation is fraudulent if the maker: (a) knows or believes that the

---

[8] GWSI pled its fraudulent misrepresentation claim (Count IV) as an affirmative cause of action against Celulosa.  For the reasons set forth in the Special Master's June 11, 2025 Report & Recommendation Report, at 14–15, that this Court fully adopted on July 7, 2025 (ECF No. 134), and pursuant to the doctrine of the "law of the case," GWSI's fraudulent misrepresentation claim is not pled in the alternative to any other cause of action.

matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies.").

GWSI's fraudulent misrepresentation claim against Celulosa is predicated on most of the same factual allegations that comprise its promissory claim against Celulosa. That is, GWSI alleges Celulosa "knowingly and willfully misrepresented … as part of the Tender process and prior to CMPC's acceptance of [GWSI's] bid on the Tender, that CMPC committed to ship and store … a minimum volume of products over the course of the term proposed by the Tender." Am. Countercl. ¶ 188.

However, GWSI does not plead any allegation to satisfy the *scienter* element of GWSI's fraudulent misrepresentation claim against Celulosa. GWSI's only allegation that Celulosa "knowingly and willfully misrepresented" CMPC's commitment to ship minimum volumes is merely a "threadbare recital" of the *scienter* element of a fraudulent misrepresentation claim, and, as such, it is insufficient. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555)).

Contrary to the requirement that GWSI must have pled factual allegations that Celulosa knew or had reason to believe that CMPC would not ship volumes in excess of some designated minimum and/or pay any related shortfall penalties for deficient shipments, GWSI alleges that CMPC and Celulosa made representations about the minimum volumes that would be shipped and then CMPC did, in fact, ship satisfactory volumes. Am. Countercl. ¶¶ 38, 87. It was not until several months into the parties' business relationship that CMPC's shipping volumes allegedly fell

28

below some previously promised minimum.  Am. Countercl. ¶ 87 ("In March 2021, CMPC shipped below the minimum volume commitments.").

Accordingly, not only has GWSI failed to plead any factual allegation that Celulosa knew or had some reason to believe its initial representation regarding an intention to ship minimum volumes was untrue or inaccurate when Celulosa made it, but GWSI pled factual averments that suggest the *veracity* of Celulosa's statement at the time it was allegedly made.  Regardless of the truth of Celulosa's representations regarding minimum volumes, because GWSI failed to plead that Celulosa made such a representation knowing or having reason to believe of its falsity or inaccuracy at the time Celulosa allegedly made it, GWSI failed to sufficiently state a claim of fraudulent misrepresentation against Celulosa upon which relief may be granted.  For these reasons, the Special Master recommends granting Celulosa's Motion, in part, to dismiss GWSI's fraudulent misrepresentation claim against Celulosa (Count IV) pursuant to Rule 12(b)(6).

## V.    **CONCLUSION**

For the foregoing reasons, the undersigned Special Master recommends that this Court enter an Order:

❖    **DENYING** Celulosa's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(2);

❖    **DENYING** Celulosa's Motion to Dismiss GWSI's claim for promissory estoppel (Count II) pursuant to FED. R. CIV. P. 12(b)(6);

❖    **GRANTING** Celulosa's Motion to Dismiss GWSI's claim for fraudulent misrepresentation (Count IV) pursuant to FED. R. CIV. P. 12(b)(6); and

❖    **GRANTING** Celulosa's Motion to Dismiss GWSI's claim for negligent misrepresentation (Count V) pursuant to FED. R. CIV. P. 12(b)(6) and in

accordance with the "law of the case" doctrine and this Court's Order of July 7, 2025 (ECF No. 134) which dismissed Count V against CMPC with prejudice.

Dated: July 16, 2025                    Respectfully submitted,

_/s/  John J. Soroko_____
John J. Soroko (Pa. Bar No. 25987)

**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1124
soroko@duanemorris.com

*Special Master pursuant to the Order of the Honorable Michael M. Baylson*

30