**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CMPC USA, INC., | Civil Action No. 2:24-cv-02087-MMB |
| Plaintiff, | |
| v. | |
| GWSI, INC., M. GERACE ENTERPRISES, INC., KEVIN BURKE, in his individual capacity, and MICHAEL GERACE, in his individual capacity, | |
| Defendants. | |
| | **ORAL ARGUMENT REQUESTED** |
| GWSI, INC. & M. GERACE ENTERPRISES, INC., | |
| Counterclaim-Plaintiffs, | |
| v. | |
| CMPC CELULOSA S.A. & CMPC USA, INC. | |
| Counterclaim-Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE GWSI PARTIES'
MOTION FOR CLARIFICATION REGARDING OPEN PRETRIAL
MOTIONS, OR, IN THE ALTERNATIVE, RECONSIDERATION**

-i-

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 7

     A.    The GWSI Parties Respectfully Request Clarity Regarding the Protocol for Forensic Imaging. .............................................................................. 7

     B.    In the Alternative, the GWSI Parties Respectfully Request that the Court Reconsider Paragraph Two of its April 23, 2026 Order. ..................................... 11

III.    CONCLUSION .................................................................................................. 12

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Guarantee & Liab. Ins. Co. v. Fojanini*,
99 F. Supp. 2d 558 (E.D. Pa. 2000) ...............................................................................11

*Harsco Corp. v. Zlotnicki*,
779 F.2d 906 (3d Cir. 1985)............................................................................................11

*Hornberger v. Vartan Grp., Inc.*,
2025 WL 3737336 (M.D. Pa. July 15, 2025)............................................................11, 12

*Ignite Spirits, Inc. v. Consulting by AR, LLC*,
2022 WL 3346754 (D. Nev. Aug. 11, 2022) ....................................................................8

*In re Maxus Energy Corp.*,
2022 WL 17169282 (Bankr. D. Del. Nov. 22, 2022) .....................................................11

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ............................................................................................7

*List Indus., Inc. v. Umina*,
2019 WL 1933970 (S.D. Ohio May 1, 2019) ...................................................................9

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999)............................................................................................11

*Peterson v. City of Minot*,
2018 WL 5045194 (D.N.D. Oct. 17, 2018) ......................................................................9

*Plastipak Packaging, Inc. v. DePasquale*,
363 F. App'x 188 (3d Cir. 2010) ......................................................................................3

*PlayUp, Inc. v. Mintas*,
350 F.R.D. 47 (D. Nev. 2025)...........................................................................................9

*Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*,
2021 WL 1968271 (W.D. Pa. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL
1968204 (Apr. 22, 2021)....................................................................................................8

*Ranke v. Sanofi-Synthelabo Inc.*,
436 F.3d 197 (3d Cir. 2006)..............................................................................................3

*Stewart v. First Transit, Inc.*,
2019 WL 13027112 (E.D. Pa. Sept. 3, 2019) ...............................................................3, 7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1)......................................................................................10, 12

Fed. R. Civ. P. 34.................................................................................................7, 8

Local Rule 7.1(f) ......................................................................................................7

Local Rule 7.1(g) .....................................................................................................7

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 128 (2018) ...............7, 8

## I.    Introduction

The GWSI Parties respectfully request that the Court clarify its April 23, 2026 order regarding open pretrial motions—specifically, paragraph two of the order, in which the Court granted the CMPC Parties' motion to compel.  *See* ECF No. 258 ¶ 2.  The order states that, by May 1, 2026, the GWSI Parties must "make available for forensic imaging by CMPC all relevant devices, including devices of Michael Gerace, Kevin Burke, and Philip Sinatra, for the purpose of determining whether the February 9, 2021 Email Exchange evidence can be recovered." *Id.*[1]  It is through those devices that Mr. Burke and Mr. Gerace have communicated with counsel regarding this litigation and other matters.  As such, those devices contain attorney-client privileged communications with counsel and attorney work product.  Moreover, those devices also contain confidential personal and financial information, including personal identifying information and confidential business information, which are all entirely irrelevant to this lawsuit.  To the extent that the Court's order requires giving the CMPC Parties access to the GWSI's Google system, including associated Google Workspaces,[2] GWSI already has reviewed and produced relevant information from those systems.  And, those systems not only contain privileged communications with counsel, but also confidential business information of the GWSI Parties, including confidential financial information, confidential information about the GWSI Parties' customers

---

[1] Mr. Sinatra is a non-party to this case and did not begin employment with GWSI until February 15, 2021, six days after the February 9, 2021 email was sent. Ex. 1, Declaration of M. Gerace, ¶ 3 ("Gerace Decl.").  Mr. Sinatra does not possess a device on which potentially responsive information is stored.  Mr. Sinatra was not copied on that February 9, 2021 email, was not forwarded a copy of that February 9, 2021 email, and there is no other indication that he ever had access to it following its original transmission that would warrant a forensic review of his devices. As such, he has no responsive devices to be imaged.

[2] A Google Workspace includes the following programs and files: Drive, Meet, Calendar, Chat, Gemini, Docs, Sheets, Slides, Vids, Keep (Digital Notes), Sites, Forms, Tasks, NotebookLM, and AppSheet. *Google Workspace*, https://workspace.google.com/ (last visited Apr. 28, 2026).

(including CMPC's competitors), and security information related to United States Customs bonded warehouses.

Thus, if read literally, the Court's order—issued in response to a purportedly narrow request to look for evidence related to a single February 9, 2021 email that has already been produced and is part of the record in this litigation—requires the GWSI Parties to give the CMPC Parties full forensic images of all of those devices and GWSI's Google system (including individual workspaces, which include email), and gives the CMPC Parties the unfettered ability to search through privileged communications with counsel, Mr. Gerace's and Mr. Burke's confidential personal and financial information, and all of GWSI's confidential business and customer information. ***None of which is relevant or discoverable in this case.***

The intrusion required by a literal reading of the Court's order is plain. As set forth in the attached declarations of Mr. Gerace and Mr. Burke, their devices contain highly sensitive, confidential personal information, including: (i) their joint tax returns with their wives; (ii) their families' (including their children's) personal identifying information, such as Social Security Numbers and Passport information; (iii) their and their wives' financial information, including bank account information; (iv) their and their children's health information; (v) their schooling information; (vi) estate-related documents related to their parents; (vii) personal messages with family members; (viii) security information related to both U.S. Customs Bonded Warehouses owned by GWSI; (ix) security information related to Mr. Gerace's residential home; (x) confidential U.S. Customs information regarding federally bonded customers; and (xi) personal photographs. *See* Gerace Decl.; Ex. 2, Declaration of K. Burke ("Burke Decl."). And all of this *personal* and private information is in addition to confidential business information also on these devices, which are used for work and personal purposes. *Id.*

The GWSI Parties do not believe that, in allowing CMPC to search for an additional copy of a single e-mail that is already part of the evidentiary record in this litigation, the Court intended to permit the CMPC Parties such unfettered access to review attorney-client privileged communications and such highly sensitive confidential personal and financial information, and information about the GWSI Parties' businesses, including information about their customers (which include competitors of CMPC). After all, "[f]orensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature." *Stewart v. First Transit, Inc.*, 2019 WL 13027112, at \*1–2 (E.D. Pa. Sept. 3, 2019) (cleaned up) (quotation omitted) (denying "[d]efendant's request for a forensic examination" of cell phones and "hand-held communications devices" where plaintiff, argued it was "overly broad . . . disproportional" and "a fishing expedition"). And the Third Circuit "discourage[s] fishing expeditions." *Plastipak Packaging, Inc. v. DePasquale*, 363 F. App'x 188, 192 (3d Cir. 2010) (citing *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)).

Beyond all of this, counsel for the CMPC Parties recently sent an email listing everything that they believe should be made available for forensic imaging. This list is wildly far afield from the purportedly narrow purpose of the CMPC Parties' original request in its motion to compel and strays far beyond what the GWSI Parties believe the Court intended by its April 23, 2026 order. Specifically, the CMPC Parties list *fifteen* separate sources for forensic imaging, many of which are themselves combining multiple sources into a single item. Those are:

1. Michael Gerace's cell phone(s)
2. Michael Gerace's computer(s)
3. Michael Gerace's Google Workspace account
4. Kevin Burke's cell phone(s)
5. Kevin Burke's computer(s)
6. Kevin Burke's Google Workspace account

7.  Philip Sinatra's cell phone(s)

8.  Philip Sinatra's computer(s)

9.  Philip Sinatra's Google Workspace account

10. Joe Mehl's cell phone(s)

11. Joe Mehl's computer(s)

12. Joe Mehl's Google Workspace account

13. IDrive cloud backup account(s)

14. File and/or backup server(s)

15. External hard drive(s)

*See* Ex. 3 (Apr. 27, 2026 email from A. Schelle to H. Bartle).

These sources venture far from what is remotely appropriate under the circumstances here. First, Mr. Sinatra was not even employed at GWSI on February 9, 2021, and was never sent the email in question. Thus, he does not possess any devices on which the email might be located. Second, Joe Mehl is a third party who provides occasional IT services to the GWSI Parties. He was not a recipient of the February 9, 2021 email, and there is no evidence that he ever received it. Moreover, as a third party, the GWSI Parties do not have the ability to make Mr. Mehl's devices available for inspection. Third, the "Google Workspace account[s]" contain significantly more information than just email, which is narrowly located in Google's Gmail and is only one part of a full Google Workspace account. Also, the Gmail mailboxes and Google Drive were already collected and do not require re-review—which in turn leads to the final point.

Finally, counsel for the GWSI Parties already collected, reviewed, and produced all evidence available from its collection of the GWSI Parties' Gmail accounts. Counsel for the GWSI Parties has already represented that the February 9, 2021 email does not exist in these materials. There has been no suggestion whatsoever that *counsel* has done anything improper, including no suggestion that counsel possesses but has withheld the February 9 email. The purpose of the Court's order was not to allow the CMPC Parties to retread the same ground already trodden by

counsel.  Rather, it would seem that the narrow and limited purpose is to ensure ***no other stones*** are left unturned in searching for evidence related to the February 9, 2021 email (which, again, is not actually missing and is part of the record in this case).

The GWSI Parties therefore seek clarification of the Court's order.  Specifically, there must be sufficient safeguards so that the GWSI Parties' attorney-client privileged communications, work product protected information, confidential business information about other customers, and confidential personal and financial information are protected from any search or review by anyone, including any outside vendor of the CMPC Parties.  Otherwise, the CMPC Parties or their agent would have access to privileged, protected, confidential business, and personally sensitive information, including related to Mr. Gerace's and Mr. Burke's families—solely so that the CMPC Parties can seek to obtain evidence that ***may or may not exist*** regarding a single February 9, 2021 email that the CMPC Parties already have in their possession and produced in this case, ***the authenticity and accuracy of which the GWSI Parties do not dispute.***  The result of this would be plainly injurious and extremely damaging to the GWSI Parties, and represent an improper intrusion as to Mr. Gerace, Mr. Burke, and their families.

Accordingly, the GWSI Parties want to ensure that the Court's order does ***not*** result in the disclosure of the GWSI Parties' privileged, protected, and highly sensitive personal and financial information, and irrelevant confidential business information.  The GWSI Parties' request for clarification—and in turn, a process for the parties to follow for the Court-ordered forensic imaging—is uncontroversial.  As explained below, countless courts and leading electronic discovery authorities (like the Sedona Conference) strongly recommend or require an independent third party to review and facilitate the forensic imaging process to protect against the disclosure of privileged, protected, or highly sensitive materials.  The GWSI Parties submit that any forensic

imaging process should account for the privileged, protected, and highly sensitive information on the devices and system at issue.

To that end, the GWSI parties request that the Court clarify its April 23, 2026 order to include the following:

1. Limiting any potential review to devices or systems from which information has not already been collected, reviewed, and produced;

2. Not permitting the CMPC Parties access to forensic images of Mr. Gerace's and Mr. Burke's devices, or GWSI's Google system (including individual workspaces), which would include attorney-client privileged communications, work product protected information, confidential and sensitive personal and financial information, and confidential business information;

3. Requiring the CMPC Parties to retain an independent third party (e.g., a third-party electronic data vendor or other third-party expert), to which the GWSI Parties agree, to conduct any collection, imaging, or search of any collection or imaging (while ensuring that access to information by the independent third party does not waive any privilege or protection that the GWSI Parties may assert over information from the devices or system);

4. Requiring that independent third party (a) only collect information that could potentially be relevant to its investigation regarding the February 9, 2021 email *and nothing else*; and (b) to provide a protocol for a search that will be limited, by applying a set of *narrowly tailored* terms related to the singular, February 9, 2021 email at issue, to the forensic data collected from any device or system to ensure that the only information subject to review relates to "whether the February 9, 2021 Email Exchange evidence can be recovered," *see* ECF No. 258 ¶ 2;

5. Permitting Mr. Gerace and Mr. Burke, or their counsel, to be present during the forensic review of any of their devices so that they can ensure that no confidential personal and financial information, including relating to their families, is accessed or reviewed;

6. Requiring that counsel for the GWSI Parties be allowed to first review any results of the independent third-party's search so that the CMPC Parties are not permitted access to any privileged, protected, or otherwise irrelevant confidential personal, financial, or business information;

7. Prohibiting the CMPC Parties from using in any way any information contained in any forensic collection, review, or imaging of Mr. Gerace's and Mr. Burke's devices and GWSI's Google system that is not related to the February 9, 2021 email; and

8.  Excluding altogether from imaging, production, or review any and all devices possessed by Philip Sinatra and Joe Mehl.

The GWSI Parties therefore respectfully request that the Court clarify paragraph two of its April 23, 2026 order regarding open pretrial motions, *see* ECF No. 258 ¶ 2, to further explain the process the parties must follow for forensic imaging.  If the Court does not clarify paragraph two of its April 23, 2026 order, the GWSI Parties respectfully move the Court under Local Rule 7.1(g) to reconsider paragraph two of its April 23, 2026 order.[3]

## II.  Argument

### A.  The GWSI Parties Respectfully Request Clarity Regarding the Protocol for Forensic Imaging.

While Federal Rule of Civil Procedure 34 allows for a party to request "designated documents or electronically stored information," *see* Fed. R. Civ. P. 34, "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing" a party's "electronic information system[s]."  Fed. R. Civ. P. 34 advisory committee note to 2006 amendment; *see also Stewart*, 2019 WL 13027112, at *1 (stating that, "before compelling forensic examinations," courts must consider "the 'significant privacy and confidentiality concerns' implicated, including that the electronic information might 'contain confidential . . . private personal information that is wholly unrelated to the litigation'" (alteration in original) (quoting *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008))).  "Direct access to an opposing party's computer systems under a Rule 34 inspection" presents these intrusiveness concerns because the devices may include "other highly confidential or private information" and "confidential attorney-client or work-product communications."  *See The Sedona Principles, Third Edition: Best Practices, Recommendations*

---

[3] As to either avenue of requested relief, and pursuant to Local Rule 7.1(f) and Paragraph I.6 of the Court's Pretrial and Trial Procedures—Civil Cases, the GWSI Parties request that the Court hear oral argument on the present motion.

*& Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 128 (2018). So, when forensic imaging is ordered, "it should be accompanied by an appropriate protocol or other protective measures that take into account any applicable privacy rights and privileges, as well as the need to avoid copying ESI that is not relevant." *Id.* at 141; *see also id.* at 152–53 (explaining "court-ordered inspections of computer systems . . . should be narrowly tailored to the circumstances, accompanied by a sufficient protective order, and usually should provide that either a special master or a neutral forensic examiner undertake the inspection").

Consistent with Rule 34 and the Sedona Principles, courts recognize that forensic examinations of devices should ***not*** proceed without an operative protocol that protects against disclosure of privileged, highly sensitive, or non-responsive material. *See, e.g.*, *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, 2021 WL 1968271, at *9 (W.D. Pa. Mar. 3, 2021) (recommending entry of "an order providing for an independent forensic review of [d]efendants' computers and ESI in accordance with" review protocol requiring designation of independent forensics expert, agreed-upon search terms for the independent expert to apply, and review by party of search result documents for responsiveness and to exclude "documents withheld on grounds of privilege"), *report and recommendation adopted*, 2021 WL 1968204, at *1–2 (Apr. 22, 2021); *Ignite Spirits, Inc. v. Consulting by AR, LLC*, 2022 WL 3346754, at *5 (D. Nev. Aug. 11, 2022) (following motion to compel forensic examination, ordering parties to confer regarding "independent third party forensic expert" for device review, search terms to use following imaging, and "[u]pon completion of the search done by the forensic examiner, the results must be provided to counsel for [non-party subject to examination] for review and designation of any results over which

attorney client privilege or work product may be claimed").[4]  Doing so "strike[s] a balance between [a party's] request for discoverable information related to its claims and [the producing party's] confidentiality and privacy concerns."  *List Indus., Inc. v. Umina*, 2019 WL 1933970, at \*6 (S.D. Ohio May 1, 2019) (granting motion to compel and ordering specific protocol for review of forensic image of hard drive by parties' experts whereby irrelevant and "confidential personal information" is first removed, and "specific privilege log of any relevant information for which [producing party] claim[ed] privilege" was created).

Here, the GWSI Parties seek clarification as to the scope and parameters that apply to the forensic imaging process ordered by the Court.  Absent clarification, producing forensic images of Mr. Gerace's and Mr. Burke's devices, GWSI's Google Workspaces, and other items, will result in disclosing to the CMPC Parties (i) attorney-client privileged communications, (ii) other protected or especially sensitive personal information from each individual that is contained on their respective devices, and (iii) confidential business information, all of which is completely irrelevant to this case.  This would be in furtherance of the CMPC Parties searching to see whether evidence regarding a *single* February 9, 2021 email can be recovered.  An email that CMPC already has on its own servers and produced in this case (the authenticity and contents of which are not disputed by the GWSI Parties).

The lopsidedness of this result would be particularly serious and damaging to Mr. Gerace and Mr. Burke, as well as GWSI, who would be required to produce to its adversary in this

---

[4] *See also Peterson v. City of Minot*, 2018 WL 5045194, at \*9 (D.N.D. Oct. 17, 2018) (ordering party to make computer available for inspection, but disallowing "defendants' attorneys" from having "free access to any information that might be on the computer through the expert they have retained" and ordering specific review protocol); *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 60–61 (D. Nev. 2025) (adopting proposed forensic examination protocol that sought "to balance [party's] privacy interests with the need for an inspection to identify and yield relevant documents").

litigation privileged or protected communications, unrelated confidential business information, and personally sensitive information that has nothing to do with the case whatsoever and to which CMPC has absolutely no right to access or review. *See generally* Gerace Decl.; Burke Decl.[5]

As such, prior to any imaging or production of data from the devices at issue to the CMPC Parties, the Court should issue an order:

1. Limiting any potential review to devices or systems from which information has not already been collected, reviewed, and produced;

2. Not permitting the CMPC Parties access to forensic images of Mr. Gerace's and Mr. Burke's devices, or GWSI's Google system (including individual workspaces), which would include attorney-client privileged communications, work product protected information, and confidential and sensitive personal and financial information;

3. Requiring the CMPC Parties to retain an independent third party (e.g., a third-party electronic data vendor or other third-party expert), to which the GWSI Parties agree, to conduct any collection, imaging, or search of any collection or imaging (while ensuring that access to information by the independent third party does not waive any privilege or protection that the GWSI Parties may assert over information from the devices or system);

4. Requiring that the independent third party (a) only collect information that could potentially be relevant to its investigation regarding the February 9, 2021 email *and nothing else*; and (b) to provide a protocol for a search that will be limited, by applying a set of *narrowly tailored* terms related to the singular February 9, 2021 email at issue to the forensic data collected from any imaged device to ensure that the only information subject to review relates to "whether the February 9, 2021 Email Exchange evidence can be recovered," *see* ECF No. 258 ¶ 2.;

5. Permitting Mr. Gerace and Mr. Burke, or their counsel, to be present during the forensic review of any of their personal devices so that they can ensure that no confidential personal and financial information, including relating to their families, is accessed or reviewed;

6. Requiring that counsel for the GWSI Parties be allowed to first review any results of the independent third-party's search so that the CMPC Parties are not permitted access to any privileged, protected, or otherwise irrelevant confidential personal, financial, or business information;

7. Prohibiting the CMPC Parties from using in any way any information

---

[5] The scope of discovery is limited to "any *nonprivileged* matter that is *relevant* to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).

contained in any forensic collection of Mr. Gerace's and Mr. Burke's devices and GWSI's Google system that is not related to the February 9, 2021 email; and

8.   Excluding altogether from imaging, production, or review any and all devices possessed by Philip Sinatra and Joe Mehl.

**B.    In the Alternative, the GWSI Parties Respectfully Request that the Court Reconsider Paragraph Two of its April 23, 2026 Order.**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). At least one of three grounds must be shown for reconsideration of an interlocutory order: (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available when the court granted the motion"; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Courts have "the inherent power to reconsider interlocutory orders when it is consonant with justice to do so." *Am. Guarantee & Liab. Ins. Co. v. Fojanini*, 99 F. Supp. 2d 558, 560 (E.D. Pa. 2000) (cleaned up) (quotations omitted). And good cause for reconsideration of an order exists when the order may result in the disclosure of privileged information. *See Hornberger v. Vartan Grp., Inc.*, 2025 WL 3737336, at *2 (M.D. Pa. July 15, 2025) ("find[ing] that good cause exist[ed] to reconsider" prior order that would result in "the production of otherwise privileged materials" (quoting *In re Maxus Energy Corp.*, 2022 WL 17169282, at *4 (Bankr. D. Del. Nov. 22, 2022))).

Here, the GWSI Parties respectfully submit that good cause exists for the Court to reconsider paragraph two of its April 23, 2026 order. First, as noted above, Mr. Sinatra did not start working at GWSI until February 15, 2021—six days after the February 9, 2021 email was sent—and there is no evidence that it was ever forwarded to him. Gerace Decl. ¶ 3. He should not be required to turn over any device for review. Same with Mr. Mehl. There is no indication

-11-

that he ever received the February 9, 2021 email.

Further, if the Court does not reconsider paragraph two of its April 23, 2026 order, a manifest injustice will result in that the GWSI Parties will be forced to provide unfettered access to privileged and irrelevant confidential personal and financial information, and confidential business information (including about CMPC's competitors) to the CMPC Parties.  Allowing the CMPC Parties to obtain the entirety of the forensic images at issue would be in conflict of fundamental principles of discovery.  *See* Fed R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any ***nonprivileged*** matter that is ***relevant*** to any party's claim or defense and proportional to the needs of the case . . . ." (emphasis added)).  And it would result in irreparable harm to the GWSI Parties, including Mr. Gerace and Mr. Burke—the only two GWSI Parties who were on the February 9, 2021 email—by allowing access to highly sensitive personal and financial information about them and their families.  *See Hornberger*, 2025 WL 3737336, at *2.

At the end of the day, the February 9, 2021 email exists (as does its attachment).  The CMPC Partes have it.  That is not disputed.  Nor is it disputed that Mr. Gerace sent that email to CMPC on February 9, 2021, and that it attaches the version of the Warehouse Services Agreement (WSA) that CMPC says it does.  GWSI is willing to stipulate to those facts.  GWSI also is willing to stipulate that, sometime after that email was sent, it was deleted from GWSI's system.  Given all of that, the prejudice and potential harm of allowing the CMPC Parties unfettered access to personal devices and GWSI's Google system—which contain privileged, and confidential personal, financial, and business information—to search for evidence related to a single email is plain.  The Court should reconsider paragraph two of its April 23, 2026 order and deny it.

## III.    Conclusion

The GWSI Parties respectfully request that the Court clarify its April 23, 2026 order regarding open pretrial motions, *see* ECF No. 258 ¶ 2, so that appropriate measures are in place

(by way of a review protocol) before forensic imaging to prevent the disclosure or review of privileged, protected, or highly sensitive personal information.  In the alternative, if the Court's order is meant to permit the CMPC Parties to obtain and search full forensic image of the devices of Mr. Gerace, Mr. Burke, and Mr. Sinatra, and the GWSI Parties' Google system and other computer-related devices, the GWSI Parties respectfully request that the Court reconsider its order and deny it.

Dated: April 28, 2026

Respectfully submitted,

*/s/ Harvey Bartle IV*
Harvey Bartle IV (PA ID 91566)
Mark Fiore (PA ID 309907)
Evan K. Jacobs (PA ID 314126)
Michael J. Schwab (PA ID 330440)
Maria Cosma (PA ID 334172)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
harvey.bartle@morganlewis.com
mark.fiore@morganlewis.com
evan.jacobs@morganlewis.com
michael.schwab@morganlewis.com
maria.cosma@morganlewis.com

Michael C. Polovich (PA ID 325334)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
Tel. 617.341.7700
michael.polovich@morganlewis.com

*Counsel for Defendants Kevin Burke and Michael Gerace and Defendants/Counterclaim Plaintiffs GWSI, Inc. and M. Gerace Enterprise, Inc.*

-13-